THE AMERICAN MOTORS COMPANY, a corporation, Plaintiff and Appellant, v. EDDIE DeGEORGE d/b/a DeGEORGE MOTOR COMPANY of Butte, Montana, Defendant and Respondent.

No. 11167.
Submitted February 10, 1967. Decided March 20, 1967.
425 P.2d 338.

Genzberger, Genzberger & Lynch, Butte, Neil J. Lynch (argued), Butte, for appellant.

Doepker & Hennessey, Butte, Mark Doepker (argued), Butte, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This appeal is from a judgment for $1,388.40 for the defendant in a non-jury trial case.

On March 9, 1954, Nash Kelvinator Corporation registered the trademark *Rambler* with the United States Patent Office for twenty years. Defendant and respondent hereafter referred to as respondent, first contracted with plaintiff and appellant's predecessor, Nash Motor Company, in 1954. Respondent was a franchised dealer on a year-to-year basis from 1954 until October 15, 1959. After 1957 when Nash automobiles were no longer manufactured, franchise agreements were made with appellant. Respondent was given written notice on July 6, 1959 that the franchise agreement would not be renewed for the next year.

Under the franchise agreement, respondent was authorized to display the trademark, *Rambler*. After the termination of the franchise, respondent continued to display the trademark, *Rambler,* on a sign on the front of his business establishment. The action in the district court sought to enjoin the respondent

from displaying the sign. Under the franchise agreement, appellant agreed to purchase *standard signs* which respondent listed with appellant within thirty days of the termination of the agreement. Here the sign was originally a Nash sign, which was repainted with the word "Rambler." Therefore, it is doubtful whether it is a standard sign. According to the franchise agreement, if the sign was not listed with appellant, appellant had the option of not buying the sign. Although respondent is sure that Mr. Henson, appellant's district manager, had knowledge of the sign, he is not sure that the sign was listed as prescribed by the franchise agreement. In the lower court the appellant submitted an amended finding that it had a duty to buy the sign. This finding was not accepted by the trial court.

Respondent counterclaimed in the district court alleging that appellant did not buy $613.40 worth of parts, accessories, and automotive supplies. In the franchise agreement appellant agreed to buy on termination of the agreement, parts, accessories, and automotive supplies of the current and three preceding models which in this case includes 1959, 1958, 1957. On cross examination Mr. DeGeorge admitted that appellant had probably bought all the parts they were obligated to buy under the franchise.

We first reverse the conclusion of the lower court that the appellant did not come into the court with clean hands. This dispute has the taint of a grudge fight between a small car dealer and a comparatively large motor company. But for the persistence of the parties, it might have been settled long before coming here. However, that persistence is not to be blamed solely on either side. Appellant has performed its part of the franchise agreement.

Second, we reverse the conclusion of the lower court that appellant does not have a right to an injunction against the respondent from displaying the Rambler trademark. Respondent signed the dealer franchise agreement which ran from October 16, 1958, to October 15, 1959. This agreement

incorporated by reference form 21500 HN which was the dealer franchise provisions. Under provision twenty-eight, respondent agreed to remove all signs containing any such Rambler trade names or trade marks. As the court looks at the contentions concerning the injunction, the only action to be enjoined is the display of the sign. Although respondent has not sold new Ramblers since the termination of the agreement and although there may be another franchised dealer who sells new Ramblers, nevertheless the word *Rambler* standing alone recalls a particular type of automobile. The appellant cites Ford Motor Co. v. Helms, et al., D.C., 25 F.Supp. 698. In that case the defendants displayed a large *Ford* sign with a smaller sign which indicated they only repaired them. In that case the court said:

"* * * the defendants have the right to repair cars of the plaintiff's and others' manufacture, and to tell the public that such is their calling. But they may not do it under any guise which would create or reasonably tend to create the impression that they repair Ford cars only (if that is not the truth—and it was said not to be by their attorney at argument) as a Ford service station; or that they are authorized dealers in Ford cars."

We find this case similar. Here the respondent sells used cars.

The Rambler sign may create an impression of authorization by American Motors to sell used cars. Therefore, the respondent is enjoined from displaying the sign.

Having concluded that the sign must be removed, it seems extremely harsh to expect the respondent to take it down at his own expense. The lower court found that respondent "was the sole owner of the sign *Rambler* displayed on his place of business." He bought the sign and paid for it when it was a *Nash* sign. When it was repainted Rambler, he paid for that, too. It is not clear that the respondent listed the sign within thirty days after the termination of the franchise agreement.

However, Mr. DeGeorge says that Mr. Henson, the appellant's district manager, must have known about the sign and told appellant about it. The problem would be much more perplexing if it were not for an amended finding of fact which the appellant submitted in the lower court. The amended finding of fact read as follows: "That under the contract the American Motors Company had a duty to buy the sign from Eddie De-George, as listed in Zone's (plaintiff's) catalogue of approved signs, belonging to Dealer at a price mutually agreed upon by Zone and Dealer. If no mutual agreement as to price can be reached, the price shall be determined by a third party mutually selected by Zone and Dealer." While the district court did not accept the amended finding, we think it offers an equitable solution to the problem of the sign. The appellant puts the sign's value at $300.00. This apparently does not include the removal of the sign. The respondent's estimate for removal of the sign and installation of a new sign is $971.33. The appellant and respondent mutually selected the district court as the trial place for their case. The judge made a conclusion of law that the sign has a value of $775. We sustain that conclusion. The respondent has parts, accessories, and automotive supplies which are valued at $613.40 by the lower court. This value was determined from defendant's exhibit "D" which shows they are Nash parts. Under the franchise agreement, appellant was only obligated to purchase parts which were from the current and three preceding models. Mr. DeGeorge admitted on cross examination that according to the franchise agreement appellant had probably bought all the parts they were obligated to buy. Appellant bought more than $700 in parts under the franchise agreement. We find that it is an unnecessary and inequitable burden for appellant to be forced to buy parts which were not included under the franchise agreement. Therefore, we reverse the conclusion of the lower court that $613.40 worth of parts, accessories, and automotive supplies must be repurchased by the appellant.

The lower court is reversed in (1) denying appellant an injunction to have the *Rambler* sign removed; (2) concluding that the appellant did not have clean hands in performance of the franchise agreement; and (3) concluding the parts, accessories, and automotive supplies in the amount of $613.40 must be repurchased by the appellant.

The lower court shall forthwith order the respondent to remove the Rambler sign, and enjoin its further use on the premises, and upon compliance with such order, the appellant shall pay the respondent $775.00. Each party to bear their own costs on this appeal.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE and ADAIR, concur.

MR. JUSTICE CASTLES, dissenting in part:

I concur in the opinion so far as it reverses the judgment. However I do not believe the defendant is entitled to anything here, he simply has not lived up to his contract.